No. 26-30016

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

NETCHOICE,
*Plaintiff-Appellee*,

*v.*

LIZ MURRILL, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF LOUISIANA;
MIKE DUPREE, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE PUBLIC
PROTECTION DIVISION, LOUISIANA DEPARTMENT OF JUSTICE,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Middle District of Louisiana
Civil Action No. 3:25-cv-231-JWD-RLB

**BRIEF OF *AMICI CURIAE* FIRST AMENDMENT LAW PROFESSORS
IN SUPPORT OF APPELLEE AND AFFIRMANCE**

Andrew Geronimo
First Amendment Clinic
CASE WESTERN RESERVE
UNIVERSITY SCHOOL OF LAW
11075 East Boulevard
Cleveland, OH 44106
(216) 368-2766
andrew.geronimo@case.edu

G.S. Hans
Civil Rights and Civil Liberties Clinic
CORNELL LAW SCHOOL
Myron Taylor Hall
Ithaca, N.Y. 14853
(607) 254-5994
gshans@cornell.edu

*Counsel for Amici Curiae*
*First Amendment Law Professors*

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 5th Cir. R. 29.2, the undersigned counsel of record submit the following certificate of interested parties as described in 5th Cir. R. 28.2.1.

Amici curiae First Amendment Law Professors state that they do not have a parent corporation and that no publicly held corporation owns 10 percent or more of their stock.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

| Person or Entity | Connection to Case |
|---|---|
| Ashutosh Bhagwat | Amicus curiae |
| Clay Clavert | Amicus curiae |
| Alan K. Chen | Amicus curiae |
| Gregg P. Leslie | Amicus curiae |
| Gregory P. Magarian | Amicus curiae |
| Andrew Geronimo | Counsel for amici |
| G.S. Hans | Counsel for amici |
| NetChoice | Plaintiff-Appellee |
| Scott A. Keller | Counsel for Plaintiff-Appellee |

Claire Elizabeth Juneau   Counsel for Plaintiff-Appellee

Jeremy Evan Maltz   Counsel for Plaintiff-Appellee

Liz Murrill   Defendant-Appellant

Mike Dupree   Defendant-Appellant

Jorge Benjamin Aguinaga   Counsel for Defendants-Appellants

Zachary Faircloth   Counsel for Defendants-Appellants

Joshua Simon Force   Counsel for Defendants-Appellants

James M. Garner, Esq.   Counsel for Defendants-Appellants

Jeffrey Darren Kessler   Counsel for Defendants-Appellants

Dated: June 2, 2026   By: */s/G.S. Hans*
         G.S. Hans

        *Counsel for Amici Curiae*
        *First Amendment Law Professors*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

INTEREST OF AMICI CURIAE ........................................................................... 1

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.      *Moody* Did Not Change the Analysis for First Amendment Facial
        Challenges; It Merely Restated the Rule. ....................................................... 2

        A.  The Supreme Court Defines Overbreadth Doctrine as Creating a
            Comparative Rule that the Court Invoke in *Moody*. ............................ 2

        B.  *Moody* Preserved the Overbreadth Standard and Defined How Courts
            Should Apply It. ................................................................................... 4

II.     Laws With Fundamental First Amendment Defects Lack a "Plainly
        Legitimate Sweep" and are Unconstitutional ................................................... 7

III.    For a Regulation With a "Plainly Legitimate Sweep," *Moody* Does Not
        Require Plaintiffs to Rebut Every Potentially Constitutional Application of a
        Law. .............................................................................................................. 10

CONCLUSION .................................................................................................... 14

APPENDIX: LIST OF AMICI CURIAE ............................................................. 15

CERTIFICATE OF COMPLIANCE .................................................................... 16

CERTIFICATE OF SERVICE ............................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americans for Prosperity Foundation v. Bonta*,
594 U.S. 595 (2021)................................................................6, 7

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973)........................................................... 2, 3, 8

*Iancu v. Brunetti*,
588 U.S. 388 (2019)..................................................................9

*Moody v. NetChoice*
603 U.S. 707 (2024)...................................................... 1, 3, 4, 8, 11

*NetChoice v. Murrill*,
812 F. Supp.3d 594, 647 (M.D. La)...........................................7, 12

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992)..................................................................9

*United States v. Hansen*,
599 U.S. 762 (2023)................................................................2, 5

*United States v. Salerno*,
481 U.S. 739 (1987)..................................................................2

*United States v. Stevens*,
481 U.S. 739 (1987)................................................................3, 5

ii

## INTEREST OF AMICI CURIAE

*Amici* are First Amendment scholars and experts who research, write, and teach about the Free Speech Clause. Collectively, *amici* have written scholarly books and dozens of academic articles on freedom of expression. *Amici* urge the court to uphold the District Court's ruling.

*Amici* submit this brief pursuant to Fed. Rule App. P. 29(a) and do not repeat arguments made by the parties. No party's counsel authored this brief, or any part of it. No party's counsel contributed money to fund any part of the preparation or filing of this brief. *Amici* file this brief with the consent of the parties. A complete list of amici is attached to this brief as an Appendix.

## INTRODUCTION

The Supreme Court has long established that challenges to laws and regulations who assert speech claims under the First Amendment can employ various doctrines to strike down those laws on a facial basis. In *Moody v. NetChoice*, 603 U.S. 707 (2024), the Court restated a test for facial challenges that requires courts to determine whether a substantial number of the law's applications are unconstitutional judged in relation to the statute's plainly legitimate sweep.

In the years since *Moody*, lower courts have struggled to apply this test. *Amici* write to clarify how the *Moody* framework — which broke no new ground — fits within the Court's precedents on overbreadth challenges and First Amendment cases

1

more generally. The *Moody* analysis cannot save a law or regulation that fails First Amendment review and does not require challengers to rebut each and every potentially constitutional application of a law or regulation.

## ARGUMENT

## I.    *Moody* Did Not Change the Analysis for First Amendment Facial Challenges; It Merely Restated the Rule

### A. The Supreme Court Defines Overbreadth Doctrine as Creating a Comparative Rule that the Court Invoked in *Moody*

The Court has recently treated facial challenges in First Amendment speech cases as roughly congruent with its overbreadth doctrine. For example, in *United States v. Hansen*, the Court described the overbreadth doctrine as a mechanism for facially invalidating statutes under the First Amendment, departing from the stringent standard usually employed for facial challenges under *United States v. Salerno*, 481 U.S. 739 (1987):

> An overbreadth challenge is unusual. For one thing, litigants typically lack standing to assert the constitutional rights of third parties. For another, litigants mounting a facial challenge to a statute normally 'must establish that no set of circumstances exists under which the [statute] would be valid.' Breaking from both of these rules, the overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied.

*United States v. Hansen*, 599 U.S. 762, 769 (2023) (quoting *Salerno*).

2

The Supreme Court first developed its overbreadth test in *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), explaining that "we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615. In *Moody v. NetChoice*, the Court used that test to articulate a standard for "First Amendment facial challenges." In *Moody*, Justice Kagan's majority opinion in *Moody* restates the test for First Amendment facial challenges as "whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Moody v. NetChoice*, 603 U.S. 707, 723 (2024) (quoting *Americans for Prosperity v. Bonta*, 594 U.S. 595, 615 (2021)). *Moody* is the most recent Supreme Court case addressing the standard for evaluating facial challenges under the First Amendment to a statute or regulation.

While courts post-*Moody* have largely defined the question as the standard for considering "First Amendment facial challenges" and the *Moody* framework, *amici* describe the framework as concerning *overbreadth* challenges. *Amici* do so to emphasize two core points. First, *Moody*'s framework originates in *Broadrick* and overbreadth doctrine. Second, overbreadth doctrine articulates a completely different standard than the *Salerno* rule for most facial challenges — one that is far easier for challengers to meet than *Salerno*, as Justice Barrett emphasized in *Hansen*. Earlier cases also invoked *Broadrick*'s overbreadth language in the same form as in

3

*Moody*, emphasizing why *amici* use overbreadth for clarity in analyzing the post-*Moody* landscape. *See, e.g. United States v. Stevens*, 559 U.S. 460, 473 (2010) ("In the First Amendment context…a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.") (internal citations omitted).

Finally, overbreadth challenges sit alongside other First Amendment doctrines for evaluating a statute or regulation's validity. Specifically, *amici* urge courts to consider the First Amendment-specific doctrines of vagueness and viewpoint discrimination in assessing the validity of the statute. These doctrines address structural constitutional flaws that chill speech: laws that target a particular viewpoint or are too vague or broad to ascertain their scope are unconstitutional; *amici* elaborate on this point *infra* Part II.

        B. *Moody* Preserved the Overbreadth Standard and Defined How Courts
           Should Apply It

In *Moody*, the Court did *not* modify its precedents regarding overbreadth challenges or assert that it changed the existing framework for evaluating overbreadth challenges. Indeed, it quoted verbatim from its precedents to restate the standard, including *Hansen*, which applied overbreadth. Justice Kagan fames the overbreadth challenge standard in *Moody* as a two-step analysis. As the majority opinion states, "[t]he first step in the proper facial analysis is to assess the state laws'

4

scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" *Moody*, 603 U.S. at 724.  In so doing, lower courts should first articulate what the government seeks to regulate, how, and by whom. *Id*. This tracks the Court's analysis for First Amendment overbreadth. *See United States v. Stevens*, 559 U.S. 460, 474 (2010) ("[T]he first step in overbreadth analysis is to construe the challenged statute." (citation omitted)).

Moving to the second step, a court must "decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id.* at 725. The two-step analysis does not change the standard for analyzing overbreadth challenges in First Amendment cases; it merely *clarifies* that courts must ascertain the scope of a regulation before assessing its constitutionality.

This two-step articulation breaks no new ground. To read *Moody* broadly to require weighing of all hypothetical applications in all cases would undermine the First Amendment interests protected by the overbreadth doctrine; that would allow the government to insulate regulations from facial challenges by postulating endless hypothetical constitutional applications (or intentionally passing vague statutes). Indeed, that reading would effectively extend *Salerno* to all First

Amendment cases, contravening the Court's express and repeated holdings that overbreadth doctrine exists as a specific exception to the *Salerno* rule.[1]

In conducting the second step of the *Moody* analysis, judges need not canvass every possible application of the law, nor must they calculate the percentages of unconstitutional and constitutional applications of a statute or regulation—an empirical task that courts are ill-equipped to handle. Indeed, recent Supreme Court cases have established how to perform the analysis when a challenger seeks to invalidate a statute or regulation on a facial basis given its constitutional infirmities.

In *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021), tax-exempt charities brought facial challenges against California's donor disclosure regulations, arguing that they had a First Amendment right against such disclosures. The Court had "no trouble" concluding that the disclosure regulation was facially invalid because a "substantial number of its applications are unconstitutional," specifically rejecting the idea that the challengers bore a burden to show that "a

---

[1] Amici take no position on the merits of a First Amendment-specific rule for facial challenges, but rather merely observe that the Court has consistently articulated the *existence* of such a distinction. *See, e.g., United States v. Hansen*, 599 U.S. 762, 769 (2023) ("[L]itigants mounting a facial challenge to a statute normally 'must establish that no set of circumstances exists under which the [statute] would be valid.' … [T]he overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied. We have justified this doctrine on the ground that it provides breathing room for free expression.") (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

6

substantial number of organizations" covered by the law would be subject to the law's chilling effects. 594 U.S. at 615. The *Americans for Prosperity* majority cited approvingly to "the filings of hundreds of organizations as *amici curiae*" as evidence for the law's unconstitutional scope. *Id*. at 616-19. The Court also rejected the dissent's concerns that the filings represented "just a small fraction of the disclosure requirement's reach," and that the Court should grant as-applied relief rather than invalidating the law based on the facial challenge. *Id*. at 642, n.11.

Indeed, the *Americans for Prosperity* Court rejected the argument that it was the plaintiff-charities' burden to show "a substantial number of organizations" would be subjected to the alleged harms of harassment and reprisals, holding "[s]uch a demanding showing is not required" unless a challenged law "is narrowly tailored to an important government interest." *Id*. at 617. Justice Alito's concurrence emphasized that in the absence of those interests, a "blunderbuss approach" that chills association "fails exacting scrutiny and is facially unconstitutional." *Id*. at 622. Thus, for speech regulations, plaintiffs can prevail on facial challenges without exhaustive evidentiary showings by showing the challenged law violates the First Amendment's proscriptions against vague, overbroad, or viewpoint-discriminatory regulations.

II. **Laws With Fundamental First Amendment Defects Lack a "Plainly Legitimate Sweep" and are Unconstitutional**

*Moody* reflects the Court balancing competing facial challenges to two different statutes that each regulate speech but also might be read to regulate non-expressive conduct—and insisting that district courts examine the actual scope of the challenged statutes. These standards are helpful when examining statutes that regulate a mix of speech and conduct, or of protected speech and unprotected speech, to ensure that legitimate statutes are not invalidated by marginal unconstitutional applications. *Cf. Broadrick v. Oklahoma*, 413 U.S. 601, 615-16 (1973) ("To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.").

In this case, the District Court — on a summary judgment record — enjoined Louisiana from enforcing these statutes against NetChoice's members because the age-verification, parental-consent, and advertising provisions were not sufficiently tailored to Louisiana's stated interest in protecting minors. 812 F. Supp.3d 594, 647 (M.D. La). Further, the District Court found that the Act's definition of covered website was such that "all applications of the Act are impermissibly vague." *Id.* at 661, citing *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023). When a State passes a law that is so vague that it is "at once under-inclusive and over-inclusive" (*Id.* at 648), then it lacks a "plainly legitimate sweep."

8

Courts should not read *Moody* to *always* require quasi-empirical exercises weighing potential applications of overbroad or viewpoint-based speech regulations. In this case, the District Court properly found that Louisiana's law definition of covered websites "vests the Division with a worrisome amount of discretion," and because the coverage definition is baked into all applications of the statute, "all applications of the Act are impermissibly vague." *Id* at 661. Because the law is vague in all its potential applications, controlling First Amendment law obviates the need for further inquiry into its hypothetical scope.

It is a bedrock constitutional principle that courts can facially invalidate speech regulations if the government fails to meet its burden under First Amendment review. If the government's regulation is overbroad, vague, or discriminates based on viewpoint, plaintiffs do not need to establish success under the two-step analysis as articulated in *Moody*; the regulation lacks a "plainly legitimate sweep" and is facially invalid. *See Moody*, 603 U.S. at 723, citing *United States v. Salerno*, 481 U.S. 739 (1987) ("In other [non-First Amendment] cases, a plaintiff cannot succeed on a facial challenge unless he 'establish[es] that no set of circumstances exists under which the [law] would be valid,' *or he shows that the law lacks a 'plainly legitimate sweep*.'") (emphasis added).

Viewpoint discriminatory or vague laws, for example, can never satisfy constitutional review, and therefore a court need not engage in the *Moody* analysis

9

to invalidate a law. Consider the hate speech law in *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992). Because the law regulated specific types of fighting words but not others, the *R.A.V.* Court construed it as viewpoint discriminatory and facially invalidated the law. *Id.* at 381 ("[W]e nonetheless conclude that the ordinance is facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses."). More recently, in *Iancu v. Brunetti*, 588 U.S. 388 (2019), the Supreme Court invalidated a provision of the federal trademark registration statute after finding that the provision was viewpoint discriminatory. The Court did not engage in an analysis as to whether the constitutional applications of the provision were outweighed by unconstitutional provisions, but instead struck down the provision on a facial basis. Indeed, the *Brunetti* Court declined to engage in an overbreadth analysis despite the government's arguments that it should do so, stating "this Court has never applied [overbreadth] analysis to a viewpoint-discriminatory law." *Id.* at 398–99.

Put differently, if a law cannot satisfy First Amendment review, a court must facially invalidate it rather than claim that it can *only* invalidate it as to a specific plaintiff or plaintiffs. A court only needs to proceed to weighing the proportions of constitutional applications against unconstitutional ones *after* it has found that the law or regulation has plausible constitutional applications. Otherwise, courts would

10

violate the traditional rule that when the government regulates speech, it bears the burden to demonstrate its regulation is constitutional.

### III. For a Regulation With a "Plainly Legitimate Sweep," *Moody* Does Not Require Plaintiffs to Rebut Every Potentially Constitutional Application of a Law

Having established that *Moody* merely crystallized the standard for facial challenges that implicate some First Amendment rights, *amici* further write to establish how courts should analyze *Moody*'s second step in comparing constitutional and unconstitutional applications. In *Moody*, the record related only to certain "heartland" applications of the applicable laws — predominately social media feeds. *Moody*, 603 U.S. at 724. But given that the Texas and Florida laws could have applied to a broader set of online activities — direct messages, events management, customer reviews, and, in the case of the Florida law, ride-share services — the Supreme Court remanded the cases for further factual development on "the full scope" of the laws' coverage in order to properly weigh the constitutionality of each application given the uncertainty of the parties about the scope of the law as revealed at oral argument. *Id.* at 724-25 (discussing other potential applications of the laws). Effectively, the Court held that in evaluating NetChoice's facial challenges, the lower courts had failed to compare the different applications of the laws to determine whether a facial challenge was warranted.

11

Because *Moody* reiterates that laws with a "plainly legitimate sweep" are facially invalid under the First Amendment only if their unconstitutional applications substantially outweigh their constitutional ones, the court's analysis must proceed at a level of abstraction when engaging in the comparative inquiry. Allowing courts to employ this rule ensures that legislatures cannot insulate invalid regulations from constitutional challenges through overbreadth and vagueness while still ensuring the judicial role remains carefully defined in enjoining enforcement of statutes or regulations on First Amendment grounds.

A comparative inquiry does not require plaintiffs to rebut each and every potentially constitutional application that the state propounds. As discussed *supra*, that would functionally jettison the First Amendment-specific rule that *Moody* reiterated. Instead, courts need only generally weigh unconstitutional applications against supposedly constitutional applications of a law or regulation. In so doing, the court may consider other constitutional infirmities, such as vagueness, that may affect the second step of the *Moody* analysis. For example, the district court in this case held that because the coverage definition of the statute — that is, the section that defined which entities were regulated — was vague, the law was unconstitutional in all applications. *NetChoice v. Murrill*, 812 F.Supp.3d 594, 661 (5th Cir. 2025) ("[B]ecause the source of the vagueness is the coverage definition, the Court finds that all applications of the Act are impermissibly vague.").

While the district court did not facially invalidate the law, its reasoning makes it hard to imagine how the law could apply constitutionally to *any* regulated entity. This Court should therefore clarify that, while facial challenges present a significant hurdle for plaintiffs to meet, other infirmities with a statute or regulation can support a finding that unconstitutional applications significantly outweigh constitutional ones, just as a law that fails heightened First Amendment scrutiny can also be facially invalidated.

13

## CONCLUSION

For the foregoing reasons, *amici* urge this court to affirm the District Court's decision.

Dated:        June 2, 2026                    Respectfully submitted,

                                              */s/ G.S. Hans*

Andrew Geronimo                               G.S. Hans
First Amendment Clinic                        Civil Rights and Civil Liberties Clinic
CASE WESTERN RESERVE                          CORNELL LAW SCHOOL
UNIVERSITY SCHOOL OF LAW                      Myron Taylor Hall
11075 East Boulevard                          Ithaca, N.Y. 14853
Cleveland, OH 44106                           (607) 254-5994
(216) 368-2766                                gshans@cornell.edu
andrew.geronimo@case.edu

                                              *Counsel for Amici Curiae*

14

## APPENDIX: LIST OF AMICI CURIAE

Amici are listed in alphabetical order. Amici's law school affiliations are stated for purposes of identification only. The views expressed herein represent the views of the individual signatories and should not be taken as the views of their universities.

Ashutosh Bhagwat
Boochever and Bird Distinguished Professor of Law
University of California, Davis School of Law

Clay Calvert
Nonresident Senior Fellow
American Enterprise Institute
Professor of Law, Emeritus
University of Florida Levin College of Law

Alan K. Chen
Thompson G. Marsh Law Alumni Professor
University of Denver, Sturm College of Law

Gregg P. Leslie
Executive Director, First Amendment Clinic
Professor of Practice
ASU Sandra Day O'Connor College of Law

Gregory P. Magarian
Thomas and Karole Green Professor of Law
Washington University in St. Louis School of Law

15

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 2,849 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

Dated: June 2, 2026

*/s/G.S. Hans*
G.S. Hans

*Counsel for Amici Curiae*

16

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on June 2, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 2, 2026                                    */s/G.S. Hans*

                                                       G.S. Hans
                                                       *Counsel for Amici Curiae*